## GRAY v. STATE.

(Division A. Oct. 13, 1930.)

[130 So. 150. No. 28866.]

R. H. Mason, of Belzoni, for appellant.

**Edwin R. Holmes, Jr.,** Assistant Attorney-General, for the state.

**Cook, J.,** delivered the opinion of the court.

In the circuit court of Humphreys county, the appellant was tried on a charge of murder, and was convicted of manslaughter and sentenced to the state penitentiary for a term of five years, and, from this conviction and sentence, he prosecuted this appeal.

On the night of the alleged killing, the appellant was visiting at the home of Sarah Ward, near the plant of the Belgrade Lumber Company, in Humphreys county, Mississippi. The house in which Sarah Ward lived was the second of three houses standing in a row and facing a road or street. It was a dark and rainy night, and between seven and eight o'clock one Cuba Johnson, a witness for the state, went to the home of Sarah Ward to get the appellant to go with him. Just before Cuba Johnson and the appellant left the house of Sarah Ward, Gertrude

Brown, who lived in an adjoining house, left the house of Sarah Ward. Several witnesses who were inside the three houses near where the killing occurred testified that, after Cuba Johnson and the appellant left Sarah Ward's house, they heard a pistol shot, and also heard Gertrude Brown say, "Please don't shoot me;" and one witness testified that, through a window in his house, he saw the flash of a gunshot.

The appellant's version of the actual killing, which was corroborated by the state witness, Cuba Johnson, was that, when he and Johnson came out onto the front gallery of the house of Sarah Ward, the deceased, G. P. Harris, was fighting with a woman with whom he lived; that Harris knocked this woman down and immediately ran up on the gallery and seized the appellant by the collar and knocked him off the gallery; that Harris then jumped down into the yard and again seized the appellant and began beating him, and while doing so said, with a vile epithet, "I am going to kill you," and immediately reached for his pocket as if to draw a weapon; and that he (the appellant) thereupon pulled his pistol and shot the deceased one time.

The testimony is that the appellant immediately left the scene, and that Harris died a few minutes later from a pistol shot which entered his chest about two inches to the left of the middle thereof and came out in the back several inches lower than the point of entry.

The testimony of the appellant made out a case of self-defense, and he is corroborated, in many respects, by the state witness, Cuba Johnson. The testimony of these two eyewitnesses is not unreasonable, and there were no circumstances or physical facts shown by the evidence which contradicted their testimony. Counsel for the state suggests that the fact that the bullet ranged slightly downward through the deceased's body is contradictory of the appellant's testimony that the deceased was facing him and had hold of his throat, or collar, at the time the

shot was fired. There was no testimony that the deceased was standing erect while he was forcing the appellant backward and striking him, and the range of the bullet through the body did not in anywise contradict the appellant's testimony and theory as to how the homicide occurred. Taking as true all the facts which the state's evidence tended to prove, we are of the opinion that they are not inconsistent with the appellant's innocence, and therefore the judgment of the court below will be reversed, and the appellant will be discharged.

Reversed, and appellant discharged.