## DEWBERRY v. STATE.

(Division B. Dec. 11, 1933.)

[151 So. 479. No. 30846.]

**Lawrence & Good,** of Vicksburg, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Argued orally by **T. J. Lawrence,** for appellant, and by **W. D. Conn, Jr.,** for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, Russell Dewberry, was indicted and convicted on a charge of murder, and sentenced to life imprisonment, from which judgment he prosecutes this appeal. The appellant killed his wife, Carrie, on the Blake place in Warren county, Mississippi, shooting her

with a shotgun, the load penetrating her left ear, with some scattering shots in her nose, cheek, and head.

The evidence shows that, on the morning of the killing, Carrie, the appellant's wife, left home, going in the direction of Vicksburg, and a little later appellant was seen to go in the same direction riding a horse. In a few minutes he returned to the house, put up his horse, secured a shotgun, and got in his automobile and went back towards Vicksburg. Shortly afterwards he returned to his house with his wife in the car, and when the car stopped Carrie got out first. Appellant then got out of the car with the shotgun in his hand. Carrie had reached about the second step of the house when the appellant shot her with the shotgun.

The state introduced as a witness a sister of the deceased, who testified to the above facts, and also that she was sitting on a well, and, when she heard the shot fired, she looked up and saw her sister, Carrie Dewberry, falling; that she ran up to the place where the deceased fell and looked in the bag the deceased had been carrying, and there was a pistol therein, which witness took out of the paper bag and fired at appellant as he was running away. She testified that the deceased was doing nothing at the time of the shooting, although she was not looking at the exact moment the gun was fired; but she was positive that she herself took the pistol out of the paper bag after the deceased had fallen to the ground.

The state produced the deputy sheriff who arrested the appellant, and who testified that, when the arrest was made, he asked the appellant how the killing occurred, and who had shot the deceased, and that the appellant said: "I will tell you. I love my wife, and I would rather see her dead than to leave me." The deputy sheriff then asked if his wife was going to leave him, and he replied "Yes," and told the deputy sheriff about going down the road trying to get her to come back with him, and said he did not care what happened to him because it could not

be worse than his wife leaving him, that she had said she was going to leave him, and that they had a little money in the bank and she wanted her half of it.

A sister-in-law of the appellant testified that she did not see Carrie after she started up the steps until she saw her falling; that she went up to the body and saw a paper bag on the left side and a pistol on the right side of the body. On cross-examination this witness testified that she never saw Carrie move the bundle (the paper bag) under her left arm at any time.

A sister of the appellant testified that she was not looking at Carrie at the time of the shooting, but that she went to the body and saw a pistol on the right-hand side thereof.

The appellant's brother Gus Dewberry testified that deceased drew the pistol on appellant at the time he fired the fatal shot.

Each of these denied the statement of the state's witness, the sister of the deceased, that she got the pistol out of the paper bag, and that it was in the bag when the deceased fell to the ground.

The appellant himself testified that he found his wife going in the direction of Vicksburg and he proceeded in that direction and tried to get her to return to the house, which she refused to do, and demanded some money; that he returned to the house, got the car and shotgun and returned to where his wife was; that she got in the car with a pistol in her hand and threatened to kill him; that he had some money in a bank in Vicksburg of which she demanded a portion for the purpose of buying what she termed a "daybed," and that they had some dispute about the money, but that he had spent most of it for bills, and did not have the amount she desired; that she got out of the car at the house and stated that she bet she would kill him yet about the money; that she would kill him if he got out of the car; and that she was about to turn on the steps and draw the pistol on him, when he

fired in self-defense. He denied the conversation with the deputy sheriff, and denied having any conversation with him about the matter.

Appellant's landlord testified that appellant's reputation for peace in the community in which he lived was good.

It is earnestly urged upon us that the evidence is insufficient to sustain the conviction, and that a peremptory instruction should have been granted, because of the principle announced in the following cases: Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498; Wesley v. State, 153 Miss. 357, 120 So. 918; Walters v. State, 153 Miss. 709, 122 So. 189; Gray v. State, 158 Miss. 266, 130 So. 150; and Weathersby v. State, 165 Miss. 207, 147 So. 481. We are of opinion that this contention is not well founded. The evidence is ample, if the jury believed the state's witness, to sustain the conviction.

We must remember that the appellant first went to where his wife was and endeavored to get her to return to the house, which she refused; that he then secured a shotgun and came back in a car to where she was, and returned to the house with her in the car. The testimony about taking the shotgun for protection is not very credible. His statement to the deputy sheriff as to why he killed her is incriminating, and, when taken with the testimony of the deceased's sister, would make a clear case of murder.

The appellant also complains of certain instructions refused by the trial judge. When the evidence was finished, the trial judge stated to counsel that he thought all the applicable law to the case could be covered in not exceeding ten instructions, not counting the instructions on the form of the verdict nor the affirmative charge.

We have examined all the instructions, both for the state and for the appellant, and we think they covered the law applicable to the facts of the case very fully. The

court, having given ample instructions to govern, was not required to give other instructions, although they might be technically correct. The court's power to limit the instructions to such as are necessary to announce the principles applicable to the case, and, after having given them, to refuse all others, is discussed in the cases of Mabry v. State, 71 Miss. 716, 14 So. 267; Harper v. State, 83 Miss. 402, 35 So. 572.

One of the instructions complained of which was refused announced that evidence of a good name might, of itself, amount to creating a reasonable doubt, and this seems to have been announced as a proper instruction in Lewis v. State, 93 Miss. 697, 47 So. 467, but was overruled in Anderson v. State, 97 Miss. 658, 53 So. 393; Calloway v. State, 155 Miss. 706, 125 So. 109, and Shelton v. State, 156 Miss. 612, 126 So. 390. We think it was not error to refuse the instructions in this case.

We find no reversible error, and the judgment will be affirmed.

Affirmed.