## HERRIN *v.* STATE.

(Division A.   March 17, 1947.   Suggestion of Error Overruled April 28, 1947.)

[29 So. (2d) 452.   No. 36347.]

Martin & Farr and Livingston & Livingston, all of
Prentiss, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

Argued orally by **Robert Livingston** and **G. L. Martin**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The principal defense interposed by the appellant in this homicide case, wherein he was convicted of manslaughter, is that he was entitled to a directed verdict in his favor, because of the fact that he was the only surviving eyewitness to the killing, and that his version of what occurred must be accepted as true, unless substantially contradicted in material particulars by the physical facts, or by the facts of common knowledge, citing Houston v. State, 117 Miss. 311, 78 So. 182, Patty v. State, 126 Miss.

94, 88 So. 498, Wesley v. State, 153 Miss. 357, 120 So. 918, Walters v. State, 153 Miss. 709, 122 So. 189, Gray v. State, 158 Miss. 266, 130 So. 150, and Weathersby v. State, 165 Miss. 207, 147 So. 481.

In the application of the rule announced in the foregoing decisions there must, also, be kept in mind, as consistent therewith, the substance of the holding in the case of Grady v. State, 144 Miss. 778, 110 So. 225, to the effect that where a defendant is claiming self-defense, and is the only eyewitness to the homicide, the jury is not confined to his evidence as to the manner in which the homicide occurred, but may consider all of the facts and circumstances bearing thereon.

The testimony discloses that there was bad feeling between the accused and his victim, Bos Shows, prior to the occasion of the homicide; that they had each made serious threats against the life of the other; that there was a dispute as to whether the accused was getting some cross-ties on his own land, or on that which Bos Shows had in charge for Dr. Izard; that Bos Shows went to where the accused had cut some cross-ties and where he was sawing some wood, to again warn him to stay off the land; that before going to the scene of the killing the said Shows left his own shotgun leaning against a tree some little distance away; but that, according to the testimony of the accused, Shows had an axe in his hand when he arrived and renewed the controversy, and was advancing toward the accused, threatening to kill him; that Shows then threw down the axe, and continued to advance after the accused had taken a shotgun out of his wagon, and after he had warned him three times to stop; that the accused then shot him because of his failure to heed the warning; and that Shows at that time had his hands in his pockets, and was continuing to threaten the life of the accused.

Obviously, in considering the reasonableness of the defendant's version of what occurred, the jury was entitled to consider whether or not it was in accord with

human experience and matters of common knowledge that Shows would have continued to advance toward a man who had procured a shotgun, and was holding it in his hand, after Shows had thrown down his axe and was advancing withhis hands in his pockets, in which he had no weapon to protect himself.

Then, too, some of the inquest jurors testified as to the position of some fresh shot signs on a very small hickory tree between the wagon and where Shows fell, which strongly indicated that the accused had not given a true account of what occurred at the time the load of shot was fired in the face of the victim.

Moreover, the accused did not report the homicide, and neither did he admit to the officers that he had done the shooting after the body was found on the next day, but always told them that he didn't have anything to say until he could talk to his lawyer. In fact, the burden of the State's proof at the trial was devoted to an effort to show by circumstantial evidence the identity of the slayer. Then, in his own defense, the accused told his story of self-defense, which he said he was telling for the first time. That was his privilege, but the jury was entitled to consider all of the foregoing facts and circumstances in connection with his own version of what occurred, in determining the application of the rule announced in the cases hereinbefore mentioned.

There are fourteen other assignments of error, but they may be grouped mainly under three points: First, the action of the trial court in permitting the State to cross-examine one of its own witnesses, who allegedly took the district attorney by surprise in testifying contrary to what he had stated to him in the witness room; second, the giving of an instruction for the State, to the effect that if the jury believed from the evidence beyond a reasonably doubt that the accused wilfully, unlawfully and feloniously killed Bos Shows without malice, in the heat of passion, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, the

jury should find the defendant guilty of manslaugter, and that, "This is true even though you may further believe from the evidence that the deceased, Bos Shows, made threats against the life of the defendant," and also regardless of what the jury "may further believe from the evidence as to the general reputation for peace or violence of the deceased;" and, third, that according to a bill of exceptions signed by the Circuit Judge, the district attorney, in his closing remarks to the jury, said: "Gentlemen of the jury you. can acquit the defendant on this charge and let him go free, and if you do he may kill another person, and the next time it may not be a colored person," to which the defendant "duly objected, and which objection the court duly sustained."

We are of the opinion that the objections on behalf of the accused, and motions made on his behalf in regard thereto were seasonably taken and made.

But we are of the further opinion that no reversible error was committed in permitting the district attorney to cross-examine the State witness referred to. And we are of the further opinion, although it may have been error to group the quoted language in the instruction hereinbefore mentioned with the remainder thereof, the instructions as a whole did not constitute reversible error, and especially in view of the fact that the defendant obtained instructions authorizing the jury to consider the bad reputation of the deceased for peace and violence, and also any threats that may have been made against him by the deceased, that is to say, when all of the instructions are considered as a whole, they fairly and fully present the law of the case. And finally, we are of the opinion that while the remarks of the district attorney constituted an appeal to race prejudice, and should not have been made, the action of the trial court in promptly sustaining an objection thereto was sufficient to prevent his overruling of the motion for a mistrial from constituting a reversible error, under all the facts and circumstances of this case.

The fact that the defendant was convicted of the crime of manslaughter, instead of murder, would indicate that the jury gave due consideration to the bad reputation of the deceased for peace or violence, and the fact that the deceased had made previous threats against the accused, and had also made such threats on the occasion when the homicide was committed.

The judgment and sentence of the trial court must, therefore, be affirmed.

Affirmed.