HYDE *v.* O'NEAL

No. 40738          October 13, 1958          105 So. 2d 553

*Wadlington & Corban,* Biloxi; *Floyd & Holleman,* Wiggins, for appellant.

*Luther Maples,* Gulfport; *Dudley Conner,* Hattiesburg, for appellee.

ROBERDS, P. J.

William F. Hyde, the appellant, sued Mrs. Hattie B. O'Neal, the appellee, to recover money damages for personal injuries which he suffered as the result of an automobile collision. The jury returned a verdict for Mrs. O'Neal and Hyde appealed. He contends that the ver-

dict was against the great weight of the testimony and that, for that reason, we should reverse and remand the case for another trial. We will now deal with that contention.

Some fourteen miles north of Biloxi, Mississippi, Highway 57 traverses Cypress Creek. The bridge over the creek is some eighteen feet wide and the road is about twenty-two feet wide. The collision occurred about twenty feet north of that bridge. The road runs north and south. Some three hundred yards to the south of the bridge begins a slight decline and curve in the road from the hilltop to the bridge. It is a graveled road. Hyde and Floyd Johnson and Jessie Williams, all members of the Negro race, about six o'clock on the morning of June 6, 1956, were traveling that road north in a 1954 one and a half ton Ford truck. The three were on the seat in the cab of the truck, Hyde driving, Johnson in the middle and Williams on the outside. At the same time, Mrs. O'Neal, alone in a 1956 Pontiac passenger car, was traveling that road, approaching the bridge from the north. Hyde says the collision occurred because Mrs. O'Neal was on the east side, the wrong side, of the highway. Mrs. O'Neal says the accident occurred because the truck was running at an excessive speed and it came onto the west side of the highway and hit the Pontiac. The jury returned this verdict: "We, the jury, find for the defendant. That by a preponderance of the evidence that the defendant, Mrs. Hattie B. O'Neal, was not negligent." Shall we reverse the finding of the jury? That depends on whether the jury had substantial evidence on the question of negligence, or liability, to support its verdict. If it did have such evidence, we should affirm; if it did not have such evidence, we should reverse and remand for a new trial. We will first briefly summarize the testimony on behalf of Hyde. There were only four eye-witnesses—the occupants of the two automobiles.

Hyde testified that he was thirty-two years of age, and he and the other occupants of the Ford truck were

in the employ of a Mr. Gill, cutting and hauling pulp-wood some twenty miles north of the scene of the accident. They passed along this road and bridge daily. They were entirely familiar with both. Hyde said he came over the hill some four hundred feet south of the bridge and he saw the Pontiac approaching from the north. He testified: "Well, I was coming around there, when I was coming down the hill I saw the Pontiac coming around the curve. I got to the bridge before the lady did, and I saw her zig-zagging, so I slowed up and kept my side, and Just as I got my front end across the bridge, and my rear wheels was the only thing on the bridge, she hit me right there, and there was nothing I could do. The car caught fire by the time she hit me, and down the hill she went."

Again he testified: "She throwed on her brakes and that pulled her car across the road, I guess. That's all I remember." In another place he said: "I held my side." It will be noted that this witness said his rear wheels were on the bridge when the accident occurred, whereas it appears to be a fact that the accident occurred some twenty to thirty feet north of the bridge. This witness testified that he was running about thirty-five miles per hour as he approached the bridge.

Floyd Johnson and Jessie Williams, the other occupants of the truck, in the main and on the fundamental question whether Mrs. O'Neal was in the center or east of the center of the road, substantiated the testimony of Hyde, although there were discrepancies in their testimony as to where the truck was as to the bridge when the accident occurred. The three occupants of the truck had lawsuits pending against Mrs. O'Neal when the case at bar was tried.

Jack Robertson was a photographer. He took pictures of the vehicles in their damaged conditions, and of the physical scenes, the day after the accident. As to the scenes, the pictures show the road, the bridge, and

the slight inclines and curves in the road. The truck had burned about as much as such a vehicle could and the Pontiac was demolished. The pictures show that the impact was between the left front of each vehicle. The truck had run off the embankment on the east side of the road, and the front of the Pontiac had been knocked to the northeast, or almost entirely around to the north, and the rear of the Pontiac was hanging over the embankment on the west side of the road.

It might be here stated that the occupants of the truck were able to get out, but all were burned, especially Hyde, who ran or walked down the road with his clothing on fire, which he finally extinguished after being badly burned. Mrs. O'Neal was thrown to the floor of her automobile. She was pinned in the car. She cried for help but Williams and Johnson, who had gotten out of the truck, did not assist her. They said they went up the road for help. Other parties arrived at the scene and helped Mrs. O'Neal get out of the Pontiac. She suffered serious injuries. Both Mrs. O'Neal and Hyde were taken to the hospital.

Alfred Meynier, a mechanic, went to the scene about ten o'clock the morning of the accident. He said the Pontiac "was sitting on, I would say, the west side of the road with the back end down in the ditch, off the paved road." Witness evidently meant "graveled road", for all parties hereto agree the road was graveled. He pulled the Pontiac to the east side of the road. He said the brakes of the Pontiac were locked. The engine was mashed in. He said about half of the Pontiac was across the road on the east side thereof. "The back wheels was off in the ditch." The Pontiac was on the west side of the road "almost cross-ways, facing a little north, I imagine." He was asked: "All you are telling the jury is that at the time of the impact Mrs. O'Neal, or whoever the driver was, had the brakes on, that is what you are telling the jury, isn't it?" and answered

"Yes, sir." He further made this significant observation: "You cannot jam the master cylinder with the pressure of your foot. Mrs. O'Neal had the brakes on when the impact occurred. She had her foot on the brakes and she had to hold them and hold them locked and when the wreck occurred it stayed locked."

James T. Hudspeth, a highway patrolman, got to the scene about eleven oclock. The Pontiac had been moved by Meynier to the east side of the road. He said he found some broken glass "slightly in the right-hand lane going north", fifteen to twenty feet north of the bridge. The truck was off of the embankment on the east some forty feet north of the bridge. In other words, the truck was some fifteen to twenty feet north of the point where the impact took place.

John A. Gill, a constable who resided in Biloxi, heard of the accident about eight o'clock and he came to the scene. Hyde, Williams and Johnson were in the employ of his father, and they were traveling in his father's truck. He testified that the truck was off of the road on the east side thereof and was some fifty to sixty feet north of the bridge. The truck was yet burning. He found some broken glass fifteen feet north of the bridge. He says that glass was slightly east of the center of the road. The front of the Pontiac had been knocked to the northeast and the back wheels and trunk were off of the road hanging over the embankment.

The foregoing testimony was offered by Hyde, the plaintiff.

Following is a summary of the evidence offered on behalf of Mrs. O'Neal: She testified herself. She was a school teacher and had driven an automobile for thirty years. On the morning in question she was driving a 1956 Pontiac to her teaching job at D'Iberville in Harrison County, Mississippi. She was familiar with the road where the accident occurred. Her car was in first-

class condition. She saw the truck when it turned the top of the hill south of the bridge. She said it was "making such a speed that I almost had my car at a stop when it hit me." She testified that the truck was running sixty miles an hour. She thought the truck was running too fast to safely negotiate the curve and cross the bridge, and she got as far as she could over on the west side, or embankment, of the road, applied her brakes and came almost to a standstill when she was struck by the truck on her side of the road. She would have gotten farther west except she would have run off of the embankment on the west side of the road. The truck hit her and knocked the front end of her car back to the northeast, almost entirely to the north, the rear end was left hanging over the west embankment. She was caught in the car and could not get out. She then described how others helped her out. She was very seriously injured.

Edward David was an employee of the State Game and Fish Commission and resided in Biloxi. He came on the scene shortly after the accident. He saw the truck in the woods on the east side of the highway. He also saw the Pontiac. The front had been knocked to the northeast although there was plenty of room for cars to pass on the east side thereof. The Pontiac was about fifteen to twenty feet north of the bridge. The rear of the Pontiac was hanging over the embankment on the west side of the road. He explained the difficulty that he, and others who had arrived at the scene, experienced in trying to get Mrs. O'Neal out of her car. Johnnie Williams was tending his sheep near the scene of the accident. He saw the smoke from the burning truck. He came to the scene. Occupants of the truck had gotten out. He helped get Mrs. O'Neal out of the Pontiac. The front had been knocked back northeast.

Walter Rushing came on the scene shortly after the accident. Witness was in an automobile traveling south. He explained the inclines and the curves in the road.

He said the Pontiac was some eighteen to twenty feet north of the bridge. The front had been knocked to the northeast. "It looked like the left side was most demolished on the left-hand side."

Weston Cuevas and Rushing and Varnado were together. Cuevas said the impact knocked the front end of the Pontiac back to the northeast. He said the impact "swerved the car around towards the northeast." The following statement by this witness is significant: "The only skidmarks I saw there was whenever the wreck hit and it brought the car back around northeast." He saw no truck skidmarks. Even after the front end of the Pontiac was driven back to the northeast there was plenty of room for automobiles to pass on the east of the Pontiac.

L. C. Varnado was with Rushing and Cuevas. He said the Pontiac was headed northeasterly and on the west side of the center of the road. It was fifty or sixty feet north of the bridge. He saw the fragments of glass and other debris on the road. As to that he testified: "Yes, sir, and from the looks of these fragments it must have been where the car was spun around and threw these fragments out of the car and into the road." He was asked what skidmarks were on the road and replied: "Just the skidmarks of a wheel where it had been skidded around from south to northeast." He said these led to the Pontiac car. The truck was fifty to sixty feet north of the bridge. He said there was no evidence the Pontiac had proceeded any distance south after the impact. The back wheels of the Pontiac were hanging over the embankment on the west side of the road. The debris was scattered over the road. It appeared to be concentrated near the center of the road.

Broxton Berry went to the scene about seven o'clock the morning after the accident. He examined the marks on the road. Indications were the Pontiac had been knocked back to the north. He concluded the west wheels

of the Pontiac were traveling on the edge of the embankment. He said: ''The right-hand side was about six inches on the shoulder of the road and it is perfectly straight down to this point.'' The debris he saw was located west of the center of the road. It appeared to consist of broken headlights and other parts knocked off of the vehicles by the impact.

■■■ The main contention of Hyde is that the debris on the road showed that Mrs. O'Neal was on the east side of the road. The testimony as to the location of the debris does not necessarily show that. There was testimony that the debris was all over the road. In addition to that, the left front ends of both vehicles were smashed and broken, causing glass and other parts of the vehicles to be scattered about the road. Also, there was testimony to the effect that the debris was to the west of the center of the road. In our opinion this was a typical case for the jury to pass upon.

■■■ Hyde complains of three instructions granted Mrs. O'Neal. He says they announce truisms and theoretical rules of law not applicable to the testimony in the case. The instructions do announce rules of law, but in our view there is ample evidence in the record to which the rules are applicable. In addition to this, the instructions granted to Hyde fully set forth the duties and responsibilities of the respective parties and the facts which the jury had to determine to support liability. The granting of the instructions was not error—certainly not reversible error.

■■■ Counsel for Hyde objected to what they considered an improper argument to the jury by counsel for Mrs. O'Neal. The court sustained the objection. There was no motion for a mistrial. Hyde argues on this appeal that a mistrial should have been ordered even though not requested. He says this is an unusual case and the requirement of a motion for mistrial should be waived. We know of no exception to the necessity for

a motion. The cases disclose that the objectionable remarks have been of varying nature, gravity and effect. ██ █ The reasons for the rule are that we cannot put the trial judge in error on a question not passed upon by him, ██ █ and also that a litigant cannot wait, without objection, and take chances on a jury verdict, and when the verdict is against him, then take advantage of a motion he should have made at the proper time. Nelms & Blum Company v. Fink, 159 Miss. 372, 383, 131 So. 817; Brush v. Laurendine, 168 Miss. 7, 150 So. 818; Crawford v. State, 54 So. 2d 230 (Miss.); Bustin v. State, 184 Miss. 1, 185 So. 259; Robertshaw Trustees, et al. v. Columbus & Greenville Railway Company, 185 Miss. 717, 188 So. 308; Aldridge v. State, 180 Miss. 452, 177 So. 765; Hathaway v. State, 195 Miss. 311, 13 So. 2d 361, Suggestion of Error Sustained 15 So. 2d 819; Herrin v. State, 201 Miss. 595, 29 So. 2d 452.

Affirmed.

*Hall, Arrington, Ethridge* and *Gillespie, JJ.,* concur.