FUNCHES *v.* STATE.

[87 South. 487, No. 21493.]

1. JURY. *Court may propound questions to jurors, but parties must be allowed to further examine them for peremptory challenge.*

In impaneling jury, questions propounded through the court is proper practice, but opportunity must be offered defendant to

further question jury, through the' court, for purpose of peremptory challenge.

2. CRIMINAL LAW. *Race prejudice argument to jury held improper.*

It was improper for counsel in his argument to state to the jury that the defendant "has enough African in him to make him as mean as Hades itself;" race, creed, or caste not being in issue

3. CRIMINAL LAW. *Refusal to instruct that accused's failure to testify should not operate to his prejudice held error.*

It is error to refuse instruction telling jury that failure of defendant to testify shall not operate to his prejudice, under section 1918, Code 1906 (Hemingway's Code, section 1578).

APPEAL from circuit court of Simpson county.
HON. W. H. HUGHES, Judge.

Neal Funches was convicted of murder, and he appeals. Reversed and remanded.

*Hilton & Hilton,* for appellant.

In view of the right of a defendant, to interrogate jurors, after a full panel has been tendered him by the state, for the purpose of exercising his right of peremptory challenge, has been questioned by the attorney-general and refused in this case by the lower court, we desire again to call the court's attention to the law as heretofore announced by this court.

In the case of *Story* v. *State,* 10 So. 47, the court announced this rule: "There is nothing prejudicial to a defendant in the court's examining jurors on their *voir dire* as to their competency allowing counsel to suggest questions, but not permitting them directly to interrogate on the subject, turning them over, however, to counsel, after being satisfied as to their competency, to question with the view to peremptory challenge.

"In the case of *Hale* v. *State,* 16 So. 387, the court announced this rule. The action of the court below refusing to permit the examination of the jurors when a full panel was presented to the defendant for his acceptance

or peremptory challenge with the view to intelligently exercising his right to challenge was error, and must reverse the judgment."

The attorney-general answers this argument by citing chapter 115, of the Laws of 1920, which gives to chancellors and circuit judges the right to formulate and promulgate the rules on practice and procedure in their courts. We do not understand that this act gives them the right to take from a defendant his constitutional and legal right in exercising his right of peremptory challenge and this can only be done intelligently by interrogating jurors as so clearly set forth in the Hale case.

They cite rule 10 which provides that the court alone shall examine jurors touching their qualification and should the juror appear to be qualified, the court will ask any additional proper question suggested by counsel. We say that the appellant in this case did not even have this right. See pages 38 and 39 of the record. After a full panel was tendered appellant he made a motion for permission to examine the jury for the purpose of exercising his peremptory challenge. This was refused and the court puts a statement in the record that a full examination could be made, through the court, by the state and defendants, before either side passed upon the jury, but no other examination would be permitted. Now the point is, even granting the position of the attorney-general that the courts had the right to promulgate rule 10, yet as a defendant is never called on to challenge a juror for cause or peremptorily until a full panel is tendered him, surely then defendant has a right to have questions propounded to the jury, after a full panel is tendered at least through the court, even though defendant's are now deprived of interrogating them directly. So under any view of the law on this point, the lower court erred.

Able counsel for the state, not having presented any authority controverting those we have presented showing that it was reversible error for the district attorney to make the argument he did with reference to the defend-

ant being of a mixed race, etc., and as we have fully presented the authorities on this point in our former brief, we shall not put any further time on that point, but say in passing that if a district attorney by argument, can so prejudice a defendant's rights as to justify this court in a reversal, this is one. We do not remember a harsher more inflammatory and prejudicial argument used in the cases cited in our former brief, wherein this court reversed the case. It appears to us that this argument is the limit. We do call the court's attention to the case of *Kelly* v. *State,* 74 So. 679, as we did not embrace this authority in our former brief.

It is our contention that section 26 of the constitution gives defendant this right by virtue of the provision therein, that, "In all criminal prosecutions the accused shall have the right to be heard by himself or counsel, or both, and to have a trial by an impartial jury." If the laws by which a man is to be tried for his life refuse or deny him the right to interrogate in person or by his selected counsel each juror tendered him by the state, why would not that same law deny him the right to interrogate the witness for and against him, and compel him to have the court, on his suggestion, to ask all questions of the witnesses? We cannot believe that it is the policy of the law, especially in criminal cases and still more especially when a man is on trial for his life, to deny him the right to examine each juror when a full panel has been tendered him by the state.

The fifth assignment of error is based upon the action of the court in refusing instructions Nos. 2, 4, 5, 11, 14 and 15 asked by the defendant. We submit that each of those instructions properly announced the law of the case, and should have been given, and especially is this true with reference to instruction No. 15 which reads as follows: "The court instructs the jury for the defendant that they as jurors have no right under the law to draw any unfavorable inference against the defendant because he did not testify in this case." The right of the defendant to

testify in his own behalf is given him by law, and it is the law that no prejudicial inference is to be indulged against him if he fails to testify, and we think· this instruction was applicable in this case, in view of the comment of the private counsel as shown by the record in his closing argument to the jury, over the protest of the defendant. and sanctioned by the trial court and which is assigned as · error No. 10.

The twelfth assignment of error is that the court erred in permitting the district attorney in his opening argument to the jury to make the following argument over the protest and objections of defendant: "Gentlemen of the jury, the·defendant in this case has got enough white man's blood in him to make him a man of judgment and sense, and he is a smart fellow indeed, and on the other hand, he has enough African blood in him to make him as mean as Hades itself."

We submit that under all the authorities which are too numerous for citation, this class abuse on the part of the prosecuting attorney is reversible error. There is no evidence in the record to show that the defendant is a mulatto, or has one drop of white man's blood in his veins, neither is there any evidence in the record showing that he is a mean negro. His character was not put in issue by the defense and it for this reason could not be assailed by the prosecution. This argument was not only unwarranted by the evidence as shown by the record, but was an appeal to race prejudice, and highly prejudicial to the rights of the defendant. *Kelly* v. *State,* 74 So. 679, and authorities there cited.

In conclusion we most seriously insist that this case certainly will be reversed and it is our honest belief the defendant should be discharged by this court. We cannot understand that a man should be deprived of his life or liberty under such proceedings as are revealed by the record of this case.

*Fred W. Lotterhos,* for appellee.

There is no rule of law which gives one on trial the positive right to propound questions to the veniremen directly and not through the medium of the presiding judge. The appellant is promised that he shall have a fair and impartial jury to try his case.    The learned trial judge herein was very careful to tender the appellant full privilege to ask questions through the court.

For many years it has been the custom in some circuit courts in Mississippi to require the *voire dire* examina·tion to be made in this way in capital cases, and under the rules made by the judges and chancellors, under the recent act of the legislature of 1920 is to be found the following: "Rule 10. In all cases the court alone shall examine jurors touching their qualification, and should the juror then appear to be qualified, the court will ask any additional proper questions suggested by counsel." Which is but another recognition of the propriety of such a rule of court, so that now instead of this being a rule in some of the circuit courts it has become the universal rule in Mississippi.

This question was presented *In re Farmer* v. *State,* recently affirmed, and not yet reported, by this court. Hence it is submitted that it has been decided by this court that such a rule shall not constitute reversible error.    The provisions of law in relation to juries are directory and a jury, although impaneled in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn.    Hemingway's Code, section 2211; *McVey* v. *State,* 78 So. 150.

In this case appellant did not exhaust all of his peremptory challenges, and there is nothing to indicate that he did not have a fair and impartial jury or that the rule of the court governing the examination of veniremen was prejudicially erroneous, illuminating in this matter. See *Powers* v. *Presgrove,* 38 Miss. 327; *Guice* v. *State,* 60

Miss. 714; *Hale* v. *State,* 16 So. 387; *Story* v. *State,* 68 Miss. 609; 16 R. C. L., pp. 246 and 247.

The argument of the district attorney in the following language: "Gentlemen of the jury, the defendant in this case has got enough white man's blood in him to make him a man of judgment and sense and he is a smart fellow indeed. And, on the other had, he has enough African blood in him to make him as mean as Hades itself," didn't necessarily inject the race issue into the case for the reason that deceased and appellant were of the same race; and if the appellant is a Mulatto, that fact was obvious to the jury; and if he was not, the comment would not have been taken by the jury as being anything but a rhetorical expression of counsel.

This court, in *Jennings* v. *The State,* 118 Miss. 619, said: "The statement of the district attorney to the jury was questionable ethics, and technically inaccurate. In this case, however, we are of the opinion that no harm was done; the district attorney is not expected to approach with the cold neutrality of the judge. He is an advocate and somewhat of a partisan, and no doubt, the jury is able to make due allowance for the arguments of the lawyer for the state.

Injection of the race of the defendant into the case can work harm when there is a race issue, or a clash between races, but it would appear that a comment on the race of a party could not raise an issue where the accused and the party assaulted are of the same race. However, the question of propriety or impropriety of the argument of the counsel and its sufficiency to affect the finality of a judgment is, after all, a question for this court to determine in each case. There is no rule of law by which the counsel for the state can aid the court by saying when argument is improper, and harmfully so. It does appear throughout the decisions that an improper comment will not of itself impeach a verdict unless it was not only improper but was prejudicial and the verdict might have been otherwise without it.

Instructions refused to the appellant. The court gave fourteen very ably drawn instructions for the appellant, which covered the case fully in its various aspects. Ten instructions asked by the appellant were refused, but a careful comparison of those given will reveal that all the instructions taken together, cover the law of the case. The assignment of error upon instructions refused refer to the instructions by number of but few of the instructions; therefore, it is not possible to say from the record, just which instructions are complained of, with the exception of those which are quoted in the assignments and briefs of counsel. Several of the refused instructions embrace various principles of law grouped in one instruction, and in most instances the refused instruction was covered, in part if not in whole, by instructions which were already given, and to have given it would have been but reiteration of principles already elaborately charged.

*R. C. Russel,* for appellee.

There can be no merit whatever in appellant's contention that the court erred in not permitting his counsel to examine each and every juror touching his qualification as a juror; because neither the constitution or laws of our state authorize it. The trial judge often grants the attorneys this privilege, but it's a mere courtesy of the court and not a constitutional or legal right that the attorneys have. Chapter 72, Code of 1906, provides how all jurors are to be empaneled in capital cases.

All the law I have been able to find makes it the duty of the trial judge to qualify the jury. And rightfully so because jurors are not either litigants or witnesses, and should not therefore be subjected to a grilling examination by astute lawyers. If the attorneys for the defendant have the right to carry each juror through a searching examination the district attorney would have the same right and these two examinations, coupled with the judge's neces-

sary examination, when would you ever get a jury empaneled under any such procedure as this?

Section 2718, Code 1906, says that listing, drawing, summoning and impaneling of juries are directory merely, and this being true, then before appellant would be entitled to a reversal of this case he must show that he did not have a fair and impartial jury, or that the court refused to propound competent questions to the jury suggested by appellant's counsel.

Counsel for appellant does not intimate that they did not have a fair and impartial jury, or that there was fraud practiced in the selection and impaneling of the jury. The only thing counsel for appellant complains about is that the court refused to let them give the jurors on their *voir dire* examination a grilling examination and there is nothing in this record to show that this was prejudicial to appellant, and if it was not the case should be affirmed so far as this assignment of error is concerned. See *Buchanan* v. *State,* 84 Miss. 332, 36 So. 388, 65 So. 584.

The court did not err in refusing appellant instructions 2, 4, 5, 11, 14 and 15, because this court will certainly take judicial notice of the fact that it doesn't take fifteen or twenty instructions to properly submit appellant's theory of this case to the jury; and, besides, the record will show that the court did grant appellant numerous other instructions which, when taken together, certainly announced the law correctly and submitted every right appellant had to the jury. In fact it is very infrequent that a jury in this sort of a case is ever misled by instructions. This court held in the case of *Higgins* v. *State,* 83 So. 245 (Miss.): "We think it was not reversible error to refuse instruction No. 7 as set out because the law upon the subject was fully and fairly given, taking the instructions as a whole."

The district attorney's language that appellant is a smart fellow indeed, and on the other hand, he has enough African blood in him to make him as mean as Hades itself, etc., is assigned as error and the case of *Kelly* v. *State,* 74 So. 679, is cited as authority on this point; but a care-

ful examination of the facts in the Kelly case and those
of the instant case will show that the two cases are not
similar.  In the Kelly case the district attorney vigorous-
ly urged the jury to convict, characterizing the defendant
as a bad negro, etc.  And in the instant case the district
attorney used no such language, but merely said that ap-
pellant had enough African blood to make him as mean as
Hades, etc., not that he was as mean as Hades or that he
was a bad negro as was said in the Kelly case, nor did the
district attorney vigorously demand appellant's conviction
in the present case.  And further, if the district attorney
had said that appellant is a bad negro, he would have been
in the record, because if this testimony is to be believed,
and it was by the jury, appellant is shown beyond a doubt
to be a desparate character, and certainly the district at-
torney had a perfect right to comment on that fact.

Appellant, taking the record as a whole, has had a fair
trial, and the right result has been reached, except that
the death penalty should have been inflicted and the case
should therefore be affirmed.

HOLDEN, J., delivered the opinion of the court.

The appellant, Neal Funches, was convicted of murder
and sentenced to life imprisonment.  The conviction rests
wholly upon circumstantial evidence, which, we think,
however, was sufficient to warrant the verdict of the jury.
The appellant assigns numerous errors for reversal, but
we find merit only in two or three of the assignments,
which we shall now discuss.

It is contended the court erred in refusing to allow
counsel for appellant to further examine the jurors before
exercising his peremptory challenges.

It appears that in impaneling the jury the court ques-
tioned the jurors on their *voir dire* and then requested that
the state and defense ask any further questions desired
through the court.  After the jury had been fully ques-
tioned and qualified by the court, and questioned by coun-

sel for the state and the defendant through the court, counsel for defendant requested that he be permitted to ask further questions directly, or through the court, with the view of exercising his peremptory challenges. The court denied the request on the ground that full opportunity had been given to counsel for the state and the defendant to ask the jurors any and all questions they desired when the jurors were being qualified, and that counsel had then exercised this right by questioning each juror through the court. It does not appear from the record what the further questions were that counsel for defendant desired to ask the jurors.

The rule followed by the lower court of requiring all questions to be asked jurors through the court is good practice, and is upheld by this court; but opportunity must be afforded the defendant to propound to the jury, through the court, such further questions, within the bounds of reason, as he may desire, with the view of exercising his right to challenge peremptorily. The privilege of such questioning by the defendant for peremptory purposes should not be denied.

The right to challenge peremptorily is sacred and valuable; and the exercise of it does not rest upon any legal qualification of the juror, but it may be exercised by the defendant for any peculiar reason, or no reason, and without legal cause. We do not know from the record here what question counsel desired to ask the jury, and therefore cannot say that the refusal of the court to permit the question was error and damaging to the rights of the defendant. The question may have already been asked and should not be repeated.

It is next contended by appellant that the court erred in allowing the prosecuting attorney to state to the jury in his argument that "The defendant in this case has got enough white man's blood in him to make him a man of judgment and sense, and he is a smart fellow indeed, and on the other hand he has enough African in him to make

him as mean as Hades itself." This statement was objected to, but there was no response by the court.

This kind of argument by the district attorney was improper, and has been condemned by this court many times in the past. Any argument of counsel to a jury which is based upon race prejudice should not be indulged in a court of justice. Such argument is foreign to the issue involved in the case and is calculated to do great harm to the interest of the accused.

Let us say once more, the humblest human being, be he white or black, red or yellow, is entitled to a fair and impartial trial on the sole issue of guilt or innocence under the law and evidence of the case. The courts of justice of our country will never retrograde to the unfair and barbarous practice of trying the accused upon his color, creed, or caste.

The injury done the accused in this case by the improper argument of the prosecuting attorney might not appeal to us as being sufficient for a reversal if there were no other errors in the record, and we therefore pass from this question without deciding whether or not it was reversible error.

But there must be a reversal upon the ground that the court erred in refusing to grant an instruction to the defendant, which is as follows:

"The court instructs the jury for the defendant that they as jurors have no right under the law to draw any unfavorable inference against the defendant because he did not testify in this case."

As we have said before, the conviction in this case rests upon circumstantial evidence, and the defendant did not testify in his own behalf. Under section 1918, Code of 1906 (section 1578, Hemingway's Code), it is provided that—"The accused shall be a competent witness for himself in any prosecution for crime against him; but the failure of the accused, in any case, to testify shall not operate to his prejudice or be commented on by counsel."

We think the court was in error in refusing to grant the instruction asked for by the defendant. The statute clearly announces his rights in the premises, that is, his failure to testify shall not operate to his prejudice; and he was entitled to have the court instruct the jury as to this legal right.

We do not say that the refusal of the court to grant the instruction would in all cases result in a reversal, because it might appear manifestly in some cases that the refusal of the instruction resulted in no injury to the accused in his trial. But we think the error in refusing the instruction in this case is reversible for the reason that, coupled with the refusal of the instruction to the defendant, counsel for the state in his argument to the jury used the following language, "We have never got Neal Funches to talk about this thing; he has always run away from it;" to which remarks counsel for defendant objected at the time. It is true it appears in the record that this language by the prosecuting attorney had reference to certain evidence in the case which went to show that the accused refused to talk about the killing or to say anything with reference to it in his own neighborhood and elsewhere, and comment of counsel upon this part of the evidence was ordinarily legitimate, but peculiarly in the case before us it is quite probable that these remarks of the prosecuting attorney indirectly led the minds of the jury to the fact that the accused had failed to testify in his own behalf. This comment, though indirectly, accentuated the error of the court in refusing the instruction to the defendant telling the jury that his failure to testify should not operate to his prejudice, and, taking the comment of the prosecuting attorney coupled with the error of the court in refusing the instruction, makes the refusal of the instruction reversible error.

*Reversed and remanded.*