HARRIS v. STATE.

In Banc. May 8, 1950.

No. 37548 (46 So. (2d) 91)

**E. L. Lamar,** for appellant.

George **H. Ethridge,** Assistant Attorney General, for appellee.

**Smith, J.**

The Calhoun County grand jury indicted appellant for murder of Marvin McKinney. The petit jury convicted him of manslaughter, for which the trial court sentenced him to serve a term of ten years in the State Penitentiary. He appealed.

Appellant is a Negro, and the man he is accused of slaying was a Negro.

Seven errors are assigned: (1) refusal of a peremptory instruction; (2) permitting the witness, Lillian Lewis, to give in evidence certain things appellant's wife said to her; (3) allowing the district attorney to cross-examine appellant in jury's presence as to other crimes; (4) over-

ruling appellant's motion for a new trial, in particular because of alleged inflammatory and prejudicial remarks made by the district attorney concerning appellant; (5) admission of a confession; (6) the verdict was contrary to law and against the great weight of the evidence; (7) and the court committed numerous errors, resulting in denial of a fair trial to appellant.

The facts follow. On a Saturday night, in the Town of Bruce, at approximately 10:00 o'clock, the appellant was on his way home, when, in passing the cafe operated by a Negro woman, Lillian Lewis, he accidentally saw his wife there. He went only to the door and insisted that his wife go home with him. She agreed to go as soon as she got her boots. They started, when, the wife said she had forgotten her boots, and she re-entered the cafe. After a short interval, not returning, appellant also went inside to see what delayed her. She was sitting on settee with the deceased, Marvin McKinney. It is to be borne in mind that there is no pretense in the record that appellant knew that the deceased was there, when on his way home he saw his wife and stopped for the purpose of getting her to go home with him. No witness testified that appellant went there seeking a quarrel with the deceased, unless the so-called confession made to the officers later may be said to imply it. The district attorney asked the State's witness, Lillian Lewis, the cafe operator: "Did any trouble come up there that night between L. T. Harris and Marvin?" To which she answered: "It did not, no sir. It was between L. T. and his wife." What she meant, of course, was that such was the beginning of the trouble. The importance of these observations will appear in the progress of this opinion.

Upon his entry into the cafe proper, the aforementioned controversy developed between appellant and his wife about her going home. It terminated in a fight between them, during which appellant testified he hit her with his unopened knife, but Lillian Lewis said he

cut her with it. Appellant, if he saw the deceased, gave no indication of it. He said nothing to deceased, and deceased said nothing to him. Nevertheless, in the midst of the fight between appellant and his wife, it appears without contradiction in the record, that deceased, without any personal provocation of any kind by appellant suddenly drew his knife and dangerously assaulted appellant. Here, too, the confession by appellant may have intimated the motive of this unprovoked assault upon him by deceased, that is, resentment of appellant assaulting his wife, with whom deceased had probably been carrying on an affair.

At any rate, deceased stabbed at appellant at a time the latter was doing nothing to him and had said nothing to him, cutting his finger, and slashing his clothes, which were later exhibited in court by way of corroboration. Appellant then killed his adversary with his knife in defense of his own life, as he contends. When the sheriff afterward arrived, he found the open knife of deceased under his body. No eyewitness to the actual slaying testified, except appellant. The general reputation of the deceased for peace and violence was shown to have been bad.

In the course of the subsequent events, and at a time when it is not very clear that it was said in the presence of appellant, and after the fatal combat was over and death had ended it, appellant's wife told Lillian Lewis, "He has killed Marvin and fixing to kill—" being interrupted by objection for defendant before she could finish it. The objection was overruled, but the answer was never completed, which would have probably ended with the word "me."

The officers came, but appellant had departed. However, they were able to track him by the bloody trail he left. An officer of Bruce arrested him, commanded him to put up his hands, and, when, instead, appellant put them in his pockets, the officer knocked him down twice, breaking his blackjack into fragments when so doing

He was carried to a clinic and his wounds treated. Appellant, according to the officer, was dazed by these blows, and not normal, and was also perhaps drunk, whether from the liquor or the blow he did not know.

Within a few minutes after leaving the clinic, the sheriff asked appellant why he killed the deceased, and he replied that he had been off from his work for three days trying to catch deceased with his wife and that he had done that night what he wanted to do. This was on the way to the jail, and is the confession in controversy.

On the witness stand, the defendant was cross-examined as to three previous criminal cases in court, in one of which he had pleaded guilty and paid a fine. The two others were at the time on appeal to the circuit court. For that reason the appellant moved to exclude the testimony relative to them, after considerable cross-examination thereasto had been had, both before and after the objection. Presently, however, the jury was retired, and the matters gone into in greater detail. At the end of this examination, the trial judge made the following final ruling: "The case which is appealed up here, I sustain the motion and direct the jury not to consider the same."

In his motion for a new trial, among the grounds assigned were certain allegedly inflammatory remarks by the district attorney claimed to have injected the race issue into the trial, such as "has it come to the place in our fair Southland when a Big Black Gorilla testimony can outweigh our faithful white sheriff?" And also: "if you allow this gorilla-like man to run at large and cut down Black Jacks then sometime he might look for something else to cut down beside Black Jacks." However, there is no proof in the record that such remarks were made to the jury by the district attorney. The only showing in the transcript as to his argument is the following: "The district attorney in his closing argument of the case made the following remark: 'In this fair Southland of ours, that the defendant, a big, black gorilla

with arms as long as your legs.' This remark was objected to by Counsel for Defendant on the ground he is appealing to race prejudice and move to exclude it. By the Court: Overruled, he is arguing the case.''

■ ■ As to the first assignment of error, that appellant should have been granted a peremptory instruction, it is overruled. It would have been otherwise, but for the implicit contradiction in the alleged confession, admitted by appellant. The cases of Weathersby v. State, 165 Miss. 207, 147 So. 481, and Lomax v. State, 205 Miss. 635, 39 So. (2d) 267, would have applied and justified a peremptory instruction for defendant.

■ ■ We would not reverse for the second assignment of error, for two reasons. One, because it is unclear from the record whether it is competent vel non, in the confused and contradictory testimony as to the facts and circumstances attendant upon its incidence. Section 1689, Code 1942; Pearson v. State, 97 Miss. 841, 53 So. 689; Smith v. State, 193 Miss. 474, 10 So. (2d) 352. The second and sufficient reason is that appellant admitted the killing both by confession and from the witness stand, and therefore, this testimony did not prejudice him. The statement quoted is the only one which we consider to present any question as to its competency.

■ ■ With reference to the third assignment of error,—cross-examination as to previous convictions,— we feel that enough of the substance of those cases had gone to the jury before it was retired to have prejudiced appellant's case before the jurors. It is true that such convictions are competent only as to the credibility of a defendant, but his credibility is very important to him. Evidence of the two convictions appealed to the circuit court were not competent. The circuit court tries such cases de novo,—it is as if the defendant had never been convicted, after proper appeal has been taken. On the circuit court trial, the jury is instructed that he is presumed to be innocent. The final ruling of the learned

circuit judge was correct, but came too late to avoid prejudice to the defendant, we think.

██ ██ We are somewhat divided on the fourth assignment of error. That is, we all agree that the mere recitals in the motion for a new trial, purporting to set out the allegedly objectionable remarks to the jury by the district attorney in his closing argument, are insufficient to establish the same as having been made, or entitle us to consider same. However, a majority of the Court think that the use of the epithet "black", modifying gorilla, did direct the attention of the jury to the race of appellant. Here is to be recalled his refusal to obey the white officer's order to raise his hands, resulting in appellant being knocked down twice by the officer. Its connotation with this reference to color may have resulted, in the minds of the jurors, in emphasis on the racial equation so as to influence them in reaching their verdict. Collins v. State, 100 Miss. 435, 56 So. 527; Hardaway v. State, 99 Miss. 223, 54 So. 833, Anno. Cas. 1913D, 1166; Moseley v. State, 112 Miss. 854, 73 So. 791; Funches v. State, 125 Miss. 140, 87 So. 487; Herrin v. State, 201 Miss. 595, 29 So. (2d) 452. In this connection, it is also interesting to recall that on the way to the jail, in the officer's car one of the officers had to threaten physical violence to appellant to compel him to cease cursing. In our judgment, therefore, the district attorney, in his fine zeal to convict what he evidently considered a guilty culprit, went too far in the use of this phrase "black gorilla."

██ ██ We reverse the judgment of the trial court for the further assignment of error that the verdict of the jury was against the great weight of the evidence. As pointed out, supra, the only possible contradiction of defendant's testimony as to what brought about the slaying by him of deceased, he being the only eyewitness testifying, was the implication from the confession. However, this implication was contradicted by the undisputed evidence otherwise, demonstrating as it did without con-

tradiction that appellant did not know deceased was at the cafe, did not go there seeking him, did not start any controversy or combat with him, and that, on the other hand, he was dangerously attacked with a sharp knife by deceased, without provocation, and that he slew in self-defense. These things were also corroborated by certain physical facts. After the homicide, the statement by appellant that he had done what he wanted to do, in our opinion, evidenced a general desire, and not a special intent on this particular occasion, since all of the proof showed the absence of such special intent on this particular occasion. Indeed, it is manifest that appellant did not know deceased was there, did or said nothing to him, and deceased attacked appellant without provocation, which led to his own death. So, we think that the confession, while substantial enough to frustrate appellant's motion for a peremptory instruction, was without sufficient potency to overcome the overwhelming weight of the other testimony in the case, and, consequently, the verdict of the jury was against the overwhelming weight of the evidence. The cause is reversed and remanded for a new trial.

Reversed and remanded.