522 So.2d 745 (1988)
Earnest HERRING
v.
STATE of Mississippi.
No. 57455.
Supreme Court of Mississippi.
March 16, 1988.
Rehearing Denied April 20, 1988.
*746 Davey L. Tucker, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Pat Flynn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Earnest Herring was convicted of the forcible rape of N.K. and sentenced to thirty (30) years in the custody of the Department of Corrections. Herring appeals and assigns the following errors:
I. The trial court abused its discretion when it refused to grant Appellant a mistrial because the prosecutor's improper closing arguments violated Mississippi law and Appellant's rights to fundamental fairness and freedom from an arbitrary and prejudicial argument pursuant to the Mississippi Constitution, Article III, Sections Fourteen, Twenty-six, and Twenty-eight, and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;
II. The trial court erred by overruling Appellant's motion to suppress his statements;
III. The State is estopped from introducing into evidence the statements of Appellant for failure to comply with Rules 1.03, 1.04, 1.05, and 1.07 of the Mississippi Uniform Criminal Rules of Circuit Court Practice; and
IV. The evidence presented by the State is legally insufficient to support the verdict of guilt, the verdict of the jury evinces prejudice, and the verdict is against the overwhelming weight of the evidence and is contrary to the law in this case.

I.

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO GRANT APPELLANT A MISTRIAL BECAUSE THE PROSECUTOR'S IMPROPER CLOSING ARGUMENTS VIOLATED MISSISSIPPI LAW AND APPELLANT'S RIGHTS TO FUNDAMENTAL FAIRNESS AND FREEDOM FROM AN ARBITRARY AND PREJUDICIAL ARGUMENT PURSUANT TO THE MISSISSIPPI CONSTITUTION, ARTICLE III, SECTIONS FOURTEEN, TWENTY-SIX, AND TWENTY-EIGHT, AND THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
During the closing argument the following exchange took place:
BY MR. PETERS:
And, so, the question comes down  just as I asked you on the opening day of this trial  can you put race aside? Can you white members vote for a fair verdict? Can you black members vote for a fair verdict? You and I know there are people in this county and this state and this city that would say  you are wasting your time. You can't have a jury with eight black people that are gonna vote for life for a black person raping a white person. Time will tell.

No matter if you've got his fingerprints all over the house. No matter if she's beaten. No matter if her vagina is bruised and torn. No matter if her room is torn up. No matter if her door is forced open. You just can't get any black people who are gonna vote for life against a black defendant who does that to a white person, You are not 
BY MR. TUCKER:
(Interposing) We are gonna object to this line of questioning as being prejudicial to the defendant. It's improper closing argument.
BY THE COURT:
Sustained. (Emphasis added).
After the objection and ruling the district attorney continued his argument. At the *747 conclusion of his argument defense counsel moved for a mistrial stating:
BY MR. TUCKER:
Your Honor, the defendant moves for a mistrial at this time based upon improper closing arguments by the prosecutor.
BY THE COURT:
Motion denied.
BY MR. TUCKER:
Specifically the comments concerning the blacks  that they would have to vote against a black.
BY THE COURT:
Motion denied.
Herring contends that the prosecutor's remarks "constituted a personal attack upon the credibility of the black jurors." Herring argues that the objection was properly made and pursuant to Johnson v. State, 477 So.2d 196, 210 (Miss. 1985), the trial judge had the duty to admonish the jury. While recognizing that a great deal of freedom is given to attorneys during closing argument, Herring contends that the prosecutor's argument was clearly outside the facts in evidence and reasonable and fair deductions which could be drawn from those facts, and therefore denied him a fair trial.
We have reversed a number of cases in which prosecutors introduced race in closing arguments. Reed v. State, 232 Miss. 432, 99 So.2d 455 (1958); Harris v. State, 209 Miss. 141, 46 So.2d 91 (1950); Funches v. State, 125 Miss. 140, 87 So. 487 (1921); and Hardaway v. State, 99 Miss. 223, 54 So. 833 (1911).
In Hickson v. State, 472 So.2d 379 (Miss. 1985), we said:
This right of one criminally accused to a fair trial is a "fundamental liberty" secured to the accused by the Fourteenth Amendment to the Constitution of the United States. Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692-93, 48 L.Ed.2d 126, 130 (1976); Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975). We have in a variety of contexts condemned conduct by the prosecuting attorneys that has substantially deflected the jury's attention from the issues it has been called up to decide, that interjects appeals to bias, passion or prejudice. Where such conduct is so substantial that the accused's right to a fair trial is substantially impaired, the trial judge should declare a mistrial. See Rule 5.15, Unif. Crim.R.Cir.Ct.Prac. Where the trial judge has abused his discretion in such matters, we unhesitatingly reverse. See, e.g., Acevedo v. State, 467 So.2d 220, 226 (Miss. 1985) (prosecutor's conduct amounting to interference with administration of justice); Smith v. State, 457 So.2d 327, 333-36 (Miss. 1984) (insinuating criminal conduct unsupported by any proof); Wiley v. State, 449 So.2d 756, 762-763 (Miss. 1984) (improper argument to jury regarding possibility of parole); Wilson v. State, 433 So.2d 1142, 1145-46 (Miss. 1983) (improper comment on defendant's failure to testify); Howell v. State, 411 So.2d 772, 773-77 (Miss. 1982) (telling jury that their verdict was not final was error); Stewart v. State, 263 So.2d 754, 756-58 (Miss. 1972) (insinuating crimes without any proof); Wood v. State, 257 So.2d 193, 199-200 (Miss. 1972) (insinuating immorality improper).
Hickson, 472 So.2d at 384.
The prosecutor's argument was improper. In 1906 we addressed a prosecutor's inflammatory argument regarding a defendant's race and reversed a murder conviction stating:
Mulattoes, negroes, Malays, whites, millionaires, paupers, princes, and kings, in the courts of Mississippi, are on precisely the same exactly equal footing. All must be tried on facts, and not on abuse. Only impartial trials can pass the Red Sea of this court without drowning. Trials are to vindicate innocence or ascertain guilt, and are not to be vehicles for denunciation.
Hampton v. State, 88 Miss. 257, 259, 40 So. 545, 547 (1906).
An unbroken line of cases from this Court stands for the proposition that racial appeals are not proper closing argument. See Hampton v. State, supra; Reed v. State, 232 Miss. 432, 99 So.2d 455 (1958); *748 Harris v. State, 209 Miss. 141, 46 So.2d 91 (1950); Herrin v. State, 201 Miss. 595, 29 So.2d 452 (1947); Funches v. State, 125 Miss. 140, 87 So. 487 (1921); Moseley v. State, 112 Miss. 854, 73 So. 791 (1916); and Collins v. State, 100 Miss. 435, 56 So. 527 (1911). Although the aforementioned cases deal with prosecutor's urging convictions because of the defendant's race, they clearly illustrate this Court's attitude toward arguments which inject this volatile issue into criminal trials. In Moseley v. State, this Court stated, "This injection of race question into court trials has been uniformly condemned by this Court." Moseley, 112 Miss. at 858, 73 So. at 792.
When the improper remarks were made defense counsel objected and the objection was sustained. The sustaining of the objection coupled with the fact that the jury, which consisted of eight black citizens, apparently ignored the racially based argument and did not return a life sentence against Herring, and the overwhelming evidence of Herring's guilt of the crime of forcible rape is enough to prevent this highly improper argument from causing a reversal of this conviction.
We wish to point out however that even though defense counsel did not request that the jury be instructed to disregard the inflammatory argument the jury apparently did so. However, in such circumstances it is incumbent upon the trial judge, to act sua sponte and instruct the jury to disregard improper remarks. Collins v. State, 100 Miss. 435, 56 So. 527 (1911). We draw the attention of the trial judges of this State to the eloquent language of Justice McLean in Collins v. State, where he said:
The simple fact that the trial judge, occupying, as he does a position of great power and influence, fails to interpose when a damaging statement is made in his presence, and before and to the twelve men who are trying the cause, is sub silentio an indorsement of the statement  at least, a seeming one. Violators of the criminal laws should be vigorously prosecuted, but there is a vast difference between legitimate prosecution and appealing to race prejudice and to the popular clamor.
Collins v. State, 100 Miss. at 441-42, 56 So. at 528-29.
We further note our firm conviction that appeals to racism in any of its forms have no place in the courtroom of this State. We uniformly condemn and roundly denounce such scurrilous tactics.
A detailed recital of the facts of this case is unnecessary. However, on the record before this Court the evidence of the guilt of the defendant is so overwhelming that we are satisfied beyond every reasonable doubt that no jury, no matter its makeup, could have reached any other result but that the defendant, Earnest Herring, was guilty beyond a reasonable doubt of the forcible rape of N.K.
For the reasons set out above the improper remarks of the district attorney in closing argument while utterly reprehensible, are insufficient to cause a reversal of this conviction and sentence.

II.

THE TRIAL COURT ERRED IN OVERRULING HERRING'S MOTION TO SUPPRESS HIS STATEMENTS.
Herring filed a motion to suppress statements made by him which he alleges were obtained in violation of his right against self-incrimination. A hearing was held on this motion and the testimony is summarized here.
Jerry Blankenship, a Clinton Policeman, was the State's first witness and he testified that on October 4, 1985, he and Highway Patrol Officer Jimmy Boxx interviewed Herring at the Clinton Police Department. Blankenship testified that Herring was advised of his rights and signed a waiver of those rights. Blankenship testified that Herring understood his rights and declined to invoke them. A statement was then taken and transcribed by the police and then signed by Herring. According to Blankenship no force, threats, promises or coercion were used to obtain this statement.
*749 On cross-examination Blankenship testified that he and Boxx had gone to the Jackson City Police Department to pick up Herring on October 4, at about 11:00 a.m. Blankenship further testified that he, Boxx and Detective Wilson had spoken to Herring the day before, October 3, 1985, at the city jail where Herring had given a statement.
Blankenship reiterated his denial that any threats, force, promises, or coercion were used to obtain the statement.
On the contrary Herring testified in support of his motion that Blankenship and Boxx beat him in order to obtain the statement. Herring claims to have been beaten at the Clinton Police Department where his statement was taken and beaten again at the Hinds County Detention Center by some investigators. Herring also contends that while at Clinton he repeatedly requested an attorney and that he signed the false confession only because of physical abuse.
Under cross-examination Herring stated that he was beaten on October 3 and on October 4 at the Hinds County Detention Center. After this Herring was taken to Clinton where he claims he was beaten by Boxx and Blankenship. Additionally, Herring claims that he was taken out in a car on U.S. Interstate 55 South by three officers, one of whom sat in the back seat and whose elbow would strike him when he didn't say what they wanted him to say.
In short Herring testified that he was beaten "most all the way through the whole program."
Herring originally claimed that he was photographed upon his arrival at the Clinton Police Department. He later stated that he was booked and photographed when he returned to the Hinds County Jail and that the pictures would show that he had been beaten in Clinton. Still later Herring testified that he was photographed before he went to Clinton and that no signs of physical abuse would be visible in the photograph. It is Herring's contention that five separate law enforcement agencies systematically abused him.
Windell Wilson, an inmate in the Warren County Jail (where Herring was taken after being returned from his visit in Clinton), testified that Herring claimed to have been beaten. Wilson thought that Herring claimed to have been beaten by the Jackson Police Department. Wilson could recall no request for medical attention from Herring. Wilson further stated that Herring had no cuts, swelling, bruises, or signs of physical abuse when he was brought to the Warren County Jail on October 4.
Peter Kiner, an inmate at Parchman who was in the Warren County Jail with Herring, testified that Herring claimed to have been beaten in Jackson and that Herring had a "little rise" on his lip, a mouse under one eye, and a "reddish eye." Kiner was unable to pinpoint the date on which he observed Herring in this condition.
Jimmy Boxx, an investigator with the Mississippi Highway Patrol, testified that on October 3, he and Blankenship and Detective Wilson went to the Jackson Police Department and talked to Herring. Boxx testified that Blankenship advised Herring of his rights and that Herring was not physically abused. According to Boxx on October 4 he and Blankenship went to the Hinds County Detention Center and got Herring and took him to the Clinton Police Department to get a statement, photograph and process him. Boxx testified that upon arriving at the Clinton Police Department Herring was again advised of his rights, waived his rights and made a statement. Boxx further testified that Herring was not abused, tricked, or forced into making this statement. Boxx also testified that Herring was photographed after he had signed the statement and this photograph of Herring was admitted as an exhibit into evidence.
Tom Wilson, a detective with the Jackson Police Department, testified that on October 3, Herring volunteered that he had raped a woman in the Jackson area, but not in the City of Jackson. Wilson called the Clinton Police Department with this information. Wilson further testified that he observed Blankenship inform Herring of his Miranda rights and that there were no threats, promises, or physical force used against Herring.
*750 The trial judge heard arguments on the motion, recited the grounds for his decision, and ruled that the typewritten statement given on October 4 was admissible. The only issue to be resolved by us is whether or not the trial judge's ruling was contrary to the overwhelming weight of the evidence. Cabello v. State, 490 So.2d 852, 856 (Miss. 1986); White v. State, 495 So.2d 1346, 1347 (Miss. 1986).
The trial judge conducted an extensive hearing to determine whether Herring's statement was admissible. After hearing evidence and argument on this issue the trial judge articulated the facts upon which his decision was based and ruled that the statement was admissible. This ruling by the trial court is not contrary to the overwhelming weight of the evidence. See Wiley v. State, 465 So.2d 318, 320 (Miss. 1985).
Therefore this assignment of error is without merit.

III.

THE STATE IS ESTOPPED FROM INTRODUCING INTO EVIDENCE THE STATEMENTS OF HERRING FOR FAILURE TO COMPLY WITH RULES 1.03, 1.04, 1.05, AND 1.07 OF THE MISSISSIPPI UNIFORM CRIMINAL RULES OF CIRCUIT COURT PRACTICE.
Herring was initially held at the Warren County Jail before he was brought to Jackson. During the course of his interrogation in Jackson, Herring mentioned that he had committed a rape in the Jackson area, but not in the City of Jackson. The Clinton Police were brought in and the next day they took Herring to Clinton and obtained a statement from him. After making a statement in Clinton, Herring was taken back to Jackson and then returned to the Warren County Jail.
Herring contends that Rules 1.03, 1.04, 1.05, and 1.07 of the Uniform Criminal Rules of Circuit Court Practice were not complied with. On February 3, 1986, a motion to dismiss was filed alleging that the State's violation of these rules required that the indictment be dismissed.
Herring was not charged with the forcible rape of N.K. until he was indicted on November 5, 1985, and on November 22, 1985, a motion was filed on his behalf by his first attorney. It therefore appears that after he was charged he was afforded legal counsel. The first mention of a preliminary hearing was on February 3, 1986, shortly before the suppression hearing and trial. It was also apparent that some time before the trial a revocation hearing was held.
The issue raised at trial and properly before this Court is whether the State's failure to give Herring a preliminary hearing and/or an initial appearance before he was interviewed by the Clinton Police Department renders his statement inadmissible.
Rule 1.04 of the Uniform Criminal Rules of Circuit Court Practice applies to "every arrested person" and provides that such a person "shall be taken before a judicial officer without unnecessary delay." Rule 1.04, Uniform Criminal Rules of Circuit Court Practice. The purpose of this rule is reflected in the text itself. At the initial appearance the judicial officer is to ascertain the identity of the defendant, inform him of the charges against him, inform him of his right against self-incrimination, his right to counsel, his right not to be held incommunicado, and his right to a preliminary hearing. Rule 1.04, Uniform Criminal Rules of Circuit Court Practice.
Herring was undoubtedly arrested by the Clinton Police. When an individual is seized by the police and is not free to leave, he is arrested. See Floyd v. State, 500 So.2d 989, 992 (Miss. 1986); Swanier v. State, 473 So.2d 180, 186 (Miss. 1985); Riddles v. State, 471 So.2d 1234, 1236 (Miss. 1985). Rule 1.04 commands that "Every arrested person shall be taken before a judicial officer without unnecessary delay." Rule 1.04, Uniform Criminal Rules of Circuit Court Practice. Herring was picked up in Jackson and taken immediately to Clinton, informed of his rights, and held for approximately 20 minutes. Herring waived his rights and a statement was obtained. After this brief interrogation he *751 was taken back to Jackson. Based on the facts of this case we cannot say that the conduct of the Clinton Police amounted to "unnecessary delay" such that the statement obtained from Herring must be deemed inadmissible. See Mallory v. United States, 354 U.S. 449, 455-56, 77 S.Ct. 1356, 1360, 1 L.Ed.2d 1479, 1483-84 (1957).
Rule 1.07, Uniform Criminal Rules of Circuit Court Practice, provides that one who is arrested and jailed for a crime is entitled to a hearing at which a judicial officer shall allow the defendant to confront his accusers. Further the judicial officer shall determine if probable cause exists to bind the defendant over to the next grand jury. Rule 1.07, Uniform Criminal Rules of Circuit Court Practice. A similar assignment was raised in Blair v. State, 445 So.2d 1373 (Miss. 1984). The defendant in Blair requested a preliminary hearing after the grand jury had returned an indictment against him. This Court discussed the purpose of a preliminary hearing and stated:
Blair's second proposition can be disposed of by observing that his request for a preliminary hearing was made after the grand jury returned the indictment against him. "The nature and purpose of a preliminary hearing is to determine whether probable cause exists to hold a person to await proper action of the grand jury." Glass v. State, 278 So.2d 384, 387 (Miss. 1973). This question had therefore been decided before Blair raised it. We find no merit in this assignment of error.
Blair, 445 So.2d at 1374.
Likewise, in this case Herring was not entitled to a preliminary hearing after he had already been indicted.
Regarding Rule 1.03 it is clear that Herring received Miranda warnings prior to this interrogation. See Rules 1.03 and 1.05, Uniform Criminal Rules of Circuit Court Practice. Having been informed of his right against self-incrimination and his right to counsel, Herring chose to waive those rights. The admission of Herring's statement made after this waiver was not erroneous.
For the foregoing reasons, this assignment of error is without merit.

IV.

THE EVIDENCE PRESENTED BY THE PROSECUTION IS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT OF GUILT, THE VERDICT OF THE JURY EVINCES PREJUDICE, AND THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND IS CONTRARY TO THE LAW IN THIS CASE.
Under this assignment of error Herring contends that the evidence in this case shows that the victim had consensual intercourse with him. In fact the evidence which was introduced at trial shows that the victim did not have consensual intercourse with Herring. It was shown that the back door to her home had been forced open and Herring's fingerprints were found on that door. It was further shown that: her bedroom door had been broken into; she had placed a 911 emergency call that was interrupted; she had been beaten and stalked; and her vagina had been lacerated during this rape. The physical damage to the victim and the property damage to her home are sufficient to dispel any notion that N.K. was a consenting partner and they point overwhelmingly to her status as a victim of the crime of forcible rape.
We have held that a victim's allegations may be corroborated by her "physical and mental condition after the incident as well as the fact that she immediately reported the rape." Goss v. State, 465 So.2d 1079, 1082 (Miss. 1985); Barker v. State, 463 So.2d 1080, 1082 (Miss. 1985); and Christian v. State, 456 So.2d 729, 734 (Miss. 1984). When all the evidence on this record is considered in the light most favorable to the verdict, this assignment of error is totally without merit. Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).
It is our considered opinion after a careful review of the entire record that the conviction and sentence of Earnest Herring should be, and they are, hereby affirmed.
*752 CONVICTION OF RAPE AND SENTENCE OF THIRTY (30) YEARS ARE HEREBY AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.