DICKINSON, PRESIDING JUSTICE,
CONCURRING IN PART AND IN RESULT:
¶27. While I join the result the majority reaches, I am writing separately to address two issues: Johnson’s prior bad acts and ah inappropriate statement the prosecutor made during closing argument.

Proper Use of Rule 40J/.(b)

¶28. During a pretrial hearing, the trial judge allowed the prosecutor to discuss incident reports concerning prior offenses allegedly committed by the defendant, without having the incident reports marked for identification. The incident re-poi’ts, which later were introduced into evidence, included discussions of prior bad *772 acts other than the ones discussed during the hearing.
¶29. I am satisfied that the record supports the conclusion that the trial judge considered those other prior bad acts when he performed the required balancing test under Mississippi Rule of Evidence 403. But had the trial judge required the State to have each proposed exhibit marked for identification before discussing them during the pretrial hearing, the confusion about that fact would have been avoided because the judge’s remarks would have referenced the exhibit numbers.
¶30. In applying the Rule 403 balancing test, the trial court stated “the probative value [did] outweigh the prejudicial effect.” This was not a correct statement or application of the test. Rule 403 does not require the probative value of evidence to “outweigh” the “prejudicial effect.” Instead, Rule 403 requires the trial judge to conduct a balancing test to determine whether the danger of unfair prejudice substantially outweighs the probative value.
¶31. Rather than point out the trial court’s error for the benefit of the bench and bar, the majority says “the trial court in this case also applied Rule 403 correctly to the prior-acts evidence,” and in a footnote, says: “[w]hile the trial judge applied Mississippi Rule of Evidence 403 correctly, the trial judge failed to state the rale correctly.” Following this statement, the majority then recites the correct test as stated in Rule 403, which—according to the trial judge’s own statement—certainly is not the test he applied. The majority fails to inform us of how a trial judge could state a rule incorrectly but then apply it correctly. One logically assumes the trial judge applied the rule as he stated it.
¶32. The majority’s misstatements of the correct application of the Rule 403 balancing test are a concern to me because they imply that, for evidence to be admissible, Rule 403 requires the evidence’s probative value to outweigh the dangers listed under Rule 403, including unfair prejudice. But Rule 403 does not require the probative value of evidence to “outweigh” the “prejudicial effect.” The rule requires only that one of the dangers stated in the rule not substantially outweigh the evidence’s probative value.
¶33. While pointing out the trial judge’s error might at first appear picayunish— after all, the trial judge’s misstatement of the test was harmless here—I point it out only because the mistake so often is made in our trial courts, and it is improperly characterized by today’s majority as a “correct” application of Rule 403. It was not a “correct” application of the rale. The majority’s casual and imprecise analysis of the application of Rule 403 is an example of how this Court, through its opinions, can cause our precedent to drift away from the requirements of our own rules to the point that practicing lawyers and judges are left to guess the rule of evidence du jour.
¶34. In Newell v. State,[5] this Court claimed for itself the exclusive power and authority to promulgate the rules of evidence for our trial courts. That being the case, surely it is our responsibility to carefully recite and apply the rules we write— as they are written.
¶35. Also at the pretrial hearing, the prosecutor stated that Johnson’s prior bad acts were admissible for four reasons: to prove intent, motive and plan, and that Johnson did not act in self-defense. After a review of the record, it is clear that these prior bad acts indeed were admissible to rebut Johnson’s assertion that he acted in *773 self-defense. So, I agree “the trial court did not abuse its discretion when .it admitted the offense reports under Rule 404(b).”[6]
¶36. It certainly is noteworthy that the prosecutor never explained how Johnson’s prior bad acts were relevant to prove motive or plan as the trial judge stated. But, because overruling a Rule 404 objection requires only that the prosecutor show some purpose other than propensity—a requirement the prosecutor certainly met here—the trial judge’s statements about uses beyond rebutting the defendant’s claim of self-defense were immaterial.

Prosecutor’s Inappropriate Statement to the Jury

¶37. Additionally, Johnson argues his conviction should be reversed because the prosecutor made the following statement to the jury during closing argument;
I’ve already touched on the self-defense, I don’t think that requires anything .else. Ladies and Gentlemen, you’re to use your common sense. A six-foot black man, a five-foot ex-wife; he wasn’t scared of her.
¶38. The majority summarily dispatches this issue by pointing out that, because Johnson’s counsel failed to object at trial, the issue may not be reviewed on appeal. While the majority’s observations are correct, more needs to be said.
¶39. There are several possible reasons—none of them good—why the prosecutor felt that, in the context of Johnson’s self-defense claim,, it was necessary to point out to the jury that Johnson was a “black man.” Her implication may have been that black men are not as likely to act in self-defense as other races. Or perhaps she intended the jury to assume that black men are more likely to engage in violence toward women, or that black men are not as worthy of' the jury’s careful consideration of a self-defense claim. The State offers no explanation for the prosecutor’s reference to Johnson’s race, and I can think of no legitimate reason his race should have been a factor in the jury’s consideration of his self-defense claim.
¶40. Whatever the prosecutor’s reason, the statement was inappropriate and should not have been made.[7] But because Johnson did not object to the statement in the trial court, we will not reverse absent a finding of plain error,[8] which requires that we conclude the error resulted in “a manifest miscarriage of justice or seriously affected] the fairness, integrity, or public reputation of judicial proceedings”—a conclusion that, based on the record before us, I am not prepared to reach. That said, while I do not believe the error rises to the level of plain error, it does comes close.
KITCHENS AND KING, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.

. Newell v. State, 308 So.2d 71, 78 (Miss. 1975).

. Maj. Op. at If 17.

. See, e.g., GMAC v. Baymon, 732 So.2d 262, 272 (Miss. 1999) (trial court erred in allowing counsel to use "irrelevant, prejudicial and inflammatory statements” before the jury); see also Reed v. State, 232 Miss. 432, 99 So.2d 455 (1958); Harris v. State, 209 Miss. 141, 46 So.2d 91 (1950).

.Roby v. State, 183 So.3d 857, 871 (Miss. 2016) (quoting Kirk v. State, 160 So.3d 685. 692 (Miss. 2015)).