KING, P.J.,
for the Court:
¶ 1. Shywon Guster (Guster) was convicted of manslaughter by the Circuit Court of Claiborne County and sentenced to serve sixteen years in the custody of the Mississippi Department of Corrections. Aggrieved by her conviction, Guster perfected this appeal and raises the following issues taken verbatim from her brief: 1.) whether the sufficiency of the evidence is such that verdict of the jury is contrary to the overwhelming weight of the evidence so that the trial judge, as a matter of law, should have granted the appellant’s ore tenus motions, at trial, for a directed verdict; 2.) whether the Court should have granted the appellant’s post trial motion for a judgment notwithstanding the verdict or in the alternative her motion for a new trial; 3.) whether it was plain error for the court not to grant the Defendant’s motion for a directed verdict based upon the un-contradicted evidence and the Weathersby Rule; and 4.) whether it was plain error for the court not to instruct the jury that it could find the defendant not guilty based upon uncontradicted evidence that she acted in defense of another.
FACTS
¶ 2. The Grand Jury of Claiborne County indicted Guster for the murder of Henry Hyder (Hyder). Prior to trial, the defense moved to suppress a statement made by Guster prior to her arrest on the grounds that it violated her Miranda rights. The court denied the motion and allowed the statement to be used at trial.
¶ 3. Guster’s first trial on this matter began on or about September 15, 1997. The record does not indicate the outcome of that trial or why a subsequent trial was necessary. Her second trial, which is the subject matter of this appeal, began on January 5, 1998. The State’s witnesses included: Hugh King, a friend of the decedent, Calvin Jackson, a police officer with the Port Gibson Police Department, Alexander Thompson, a neighbor of the defendant, and Dr. Steven Hayne, a forensic pathologist.
¶ 4. King testified that on the day that Hyder was killed, Guster attempted to reach Hyder. According to King after Guster was unable to contact Hyder directly, she asked King to tell Hyder that she wanted to engage in sexual intercourse with him.
¶ 5. Officer Calvin Jackson,' the only patrolman on duty with the Port Gibson Police Department on May 12, 1997, was dispatched to the Guster home to investigate a stabbing. Jackson also received a call from the hospital indicating that a stabbing victim had arrived there. Instead of traveling to the Guster home, Jackson went to the hospital first. Approximately forty-five minutes to an hour after Jackson received the call from Gus-ter, he arrived at the scene. Guster informed him that Hyder had choked her and she had stabbed Hyder. Jackson noticed blood drops on the toys, living room floor, patio and what appeared to be blood smeared on the kitchen floor. Jackson indicated he saw no sign of forced entry or struggle.
¶ 6. Thompson testified that he saw Hy-der leave via the back door of Guster’s home. Hyder, bleeding from his back and mouth, came across the street and asked for help. Hyder was placed in the backseat of a car and taken to the hospital. While in route, Hyder leaned back on the car seat which pushed the knife farther into his back. Hyder then slumped over and lost consciousness.
*1088 ¶ 7. According to Dr. Hayne, death resulted from blood loss secondary to a single stab wound to the back. The knife was six inches deep in Hyder’s back. According to Dr. Hayne, great force was required to stab someone in this manner. Dr. Hayne could not exclude the possibility that the knife went in deeper after the initial wound. However, he noted there was no physical evidence that would suggest that the knife was advanced after the initial wound. Dr. Hayne testified that there were no defensive wounds on Hyder but there were three small abrasions which were consistent with falling.
¶ 8. At the conclusion of the State’s case in chief, the court denied Guster’s motion for directed verdict.
¶ 9. Guster was the first defense witness called. She had dated Hyder for five months, from April 1996 to the end of September 1996. In late September 1996, Hyder assaulted Guster as she attempted to enter her home. Her mother was also attacked at this time and received a broken thumb. After the attack, Guster filed charges against Hyder with the Port Gibson Police Department. Hyder again attacked her on December 26, 1996, and February 20, 1997. Guster was injured on each of these occasions and filed charges after each incident. Guster testified that on May 3, 1997, Hyder repeatedly called her home and threatened her. Charges were again filed against Hyder who was placed under a restraining order and prohibited from coming withing one hundred feet of Guster or her home.
¶ 10. On May 12, 1997, Guster came home from school and took a nap. Her mother and son were outside playing while she slept. She awakened about 5:00 p.m. A short time later, her mother departed for Vicksburg. Guster testified that she locked the screen door and pushed the inside door closed. She went to her bedroom to get some clothes to iron. While she was in the bedroom, her son said, “Red is here.” Guster said that she did not pay attention to what her son said until she walked back into the livingroom and noticed Hyder standing against the wall. He threatened her and subsequently choked her. The phone rang and she told him that it was necessary to answer it. Hyder released Guster and allowed her to answer the phone. It was a friend of her mother, Earnest Caldwell. Guster stated that she whispered to Caldwell that Hyder was there and hung up. Hyder again pushed and choked Guster after she hung up the phone. Guster yelled to her son to leave the room and sit down. Instead her son bit Hyder on the leg. Hyder kicked her then two-year-old son in the chest and knocked him across the table. Guster picked up the knife and stabbed Hyder in the back. She expressed a fear for both her life and that of her son. Hyder ran to the back door and stated that he would be back. Guster watched him cross the street and saw him being placed in the backseat of a car. Guster testified that the kitchen counter was damaged and the glass was cracked in one of the cabinet doors as a result of her struggles with Hyder.
¶ 11. She called the police and an officer arrived about forty-five minutes to an hour later. She was taken to the Port Gibson Police Station to make a statement. She testified she was upset and just wrote whatever came to mind. Guster returned home after the statement was completed. About an hour after Guster returned home, officer Jackson came to her home and stated that Hyder was dead. Guster was told that she would be formally charged with murder and needed to report to the police station. Taken to the police station by her mother, Guster was jailed overnight and released on bond the next day. On cross, Guster admitted having previously picked up the knife and put it back down. She stated it was used only after Hyder kicked her son.
¶ 12. Ms. Cozetta Walker, Guster’s mother, indicated that she returned home from Vicksburg to find her yard was full of people. A young man was in her house *1089 holding her grandson. He stated that Guster was at the police station.. Ms. Walker then noticed blood on the floor and porcelain missing from the kitchen counter. Walker went to the police station and brought her daughter home. Walker testified that she took Guster back to the police station about 9:00 p.m.
¶ 13. Earnest Caldwell testified that he called Guster’s home and she answered and whispered that Hyder was there and then hung up. He went over to .the house and saw Hyder looking out of the kitchen window. Caldwell stated he heard a thump before he entered the house. Upon entering, he saw Hyder exit through the back door. Caldwell stated that Guster was crying and began to straighten up the house. He stopped her and told her to leave it until the police arrived. Caldwell noticed that bar stools were over turned, blood was on the floor, a coffee table was overturned and that the counter in the kitchen had been moved.
¶ 14. Kenneth Davis, Claudia Thompson and Larry Clark all testified as to Guster’s peaceable nature and reputation in the community. The defense rested its case and the State called two rebuttal witnesses.
¶ 15. Officer Jackson testified on rebuttal, after viewing the original photo taken of the scene, that the porcelain molding was not missing from the kitchen counter. Linda Jenkins, a friend of Guster’s, called in rebuttal, questioned Guster’s peaceable character. Jenkins testified to having witnessed a fight between Guster and her mother.
¶ 16. At the close of the State’s case, the defense motion for a directed verdict was denied. The jury found Guster guilty of manslaughter. After a pre-sentence investigation, the court sentenced Guster to sixteen years in the custody of the Mississippi Department of Corrections. Guster’s post-trial motions were denied and she perfected this appeal.
I
Whether it was plain error for the court not to instruct the jury that it could find the defendant not guilty based upon uncontradicted evidence that she acted in defense of another?
¶ 17. The Court finds merit in Guster’s fourth assignment of error and, accordingly, reverses and remands this matter for a new trial.
¶ 18. Guster offered a self defense instruction which was granted. She now contends that the trial court should have sua sponte reformed her self defense instruction to raise the issue of defense of others consistent with the trial testimony.
¶ 19. At trial Guster offered evidence that Hyder was assaulting her. In response to this assault, Guster’s two year old son bit Hyder on the leg. Hyder then turned his rage upon Guster’s two-year-old son, kicked him in the chest, and knocked him across the table. Guster testified that she feared for her life, and that of her son, and stabbed Hyder in the back to prevent his further assault upon her two-year-old son.
¶ 20. As support for her argument, Guster has cited this court to Manuel v. State, 667 So.2d 590 (Miss.1995), In Manuel, the supreme court held “In homicide cases, the trial court should instruct the jury about a defendant’s theories of defense, justification, or excuses that are supported by the evidence, no matter how meager or unlikely, and the trial court’s failure to do so is error requiring reversal of a judgment of conviction.” Id. at 593. Where the instructions are in improper form and are the only ones embodying a legally correct theory of the defendant’s defense, it is the duty of the trial court to see that the instructions are placed in proper form for submission to the jury.
¶ 21. Guster submitted a self defense instruction, which was legally correct, but did not conform, with the evidence. It was therefore the trial court’s responsibility to *1090 conform the instruction to the evidence, particularly since this was the only instruction on Guster’s theory of the case.
¶ 22. This Court finds that the failure to reform this instruction to have been prejudice error and accordingly reverse and remand for a new trial.
¶ 23. Because, we reverse on this issue, it is unnecessary to address Guster’s other assignments of error.
¶24. Finding error, the conviction of Shywon Guster of manslaughter is reversed and remanded.
¶ 25. THE JUDGEMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE TAXED TO CLAIBORNE COUNTY.
BRIDGES, IRVING, MOORE, AND PAYNE, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., LEE AND THOMAS, JJ.