# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00046-COA

**MELVIN HARE**                                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2015 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF DEPRAVED-HEART MURDER, AND SENTENCED TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY-FIVE YEARS TO SERVE AND THE REMAINDER SUSPENDED, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED - 06/20/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND WESTBROOKS, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Melvin Hare was convicted by a jury in the Warren County Circuit Court of depraved-heart murder, and sentenced to thirty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty-five years to serve and five years suspended, to be served

under postrelease supervision. Hare brings three issues for our review: (1) whether he received ineffective assistance of counsel; (2) whether there was sufficient evidence to support the verdict; and (3) whether the verdict was contrary to the overwhelming weight of the evidence. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 26, 2013, Hare visited Lubertha Sims at her house. Hare and Sims had dated intermittently for approximately a year. Hare allegedly came by that evening to eat dinner with Sims. While Hare was at Sims's house, Roy Clark—Sims's ex-boyfriend—arrived and began to taunt Hare. Clark stood outside of Sims's home and repeatedly demanded that Hare come out of the house, telling him, "I'm going to whip you up." At first, Sims and Hare remained inside the house—with the screen door locked. But then Clark, a large man, ripped the screen door off, and came onto the porch.

¶3. Clark then turned and walked back into the yard as he continued to threaten Hare. Hare told Clark that he would leave the house, but Sims halted Hare, telling him that she had already called 911 and that the police were on their way. As Clark approached the door again, the two men became engaged in a physical altercation. The two tussled on the floor, and Hare pulled a knife from his pocket and began stabbing Clark multiple times. Sims was able to grab the knife and throw it out of the reach of both Hare and Clark. Both men then got up, and Clark went across the street and collapsed. Clark lay on the ground with his intestines protruding.

¶4. By the time police arrived on the scene, paramedics were attending to Clark. Clark

2

was taken to River Region Hospital to be treated for multiple stab wounds. Dr. Brian Hudson, the emergency-room physician that treated Clark, testified at trial that when Clark arrived he had multiple stab wounds to his chest, back, and abdomen. Later, Clark was airlifted to the University of Mississippi Medical Center. At this time, Clark was alive, but unconscious.

¶5. Dr. Mark LeVaughn, who conducted the autopsy of Clark's body, testified at trial as an expert witness. Dr. LeVaughn testified that Clark's body had possibly twenty-two separate stab wounds. He further testified that there were multiple stab wounds to Clark's back. Additionally, Dr. Levaughn found stab wounds on Clark's forearm and palm—wounds which Dr. LeVaughn characterized as defensive in nature.

¶6. When questioned by the investigator at the scene, Hare admitted to the investigator that he had stabbed Clark. Hare was originally charged with aggravated assault, but Clark died, and Hare was then charged with murder. At trial, Hare's defense was that he was afraid of Clark, and thus had acted in self-defense. The jury was given a depraved-heart-murder instruction, as well as a culpable-negligence-manslaughter instruction. Additionally, the jury was instructed on self-defense. At the conclusion of the trial, the jury found Hare guilty of depraved-heart murder. Hare then moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial; the court subsequently denied his motion. Hare appeals.

## DISCUSSION

### I. Ineffective Assistance of Counsel

3

¶7. In this issue, Hare claims he received ineffective assistance from his trial counsel because his counsel did not submit an instruction on heat-of-passion manslaughter, and allowed the State's instruction on culpable-negligence manslaughter.

¶8. Rule 22(b) of the Mississippi Rules of Appellate Procedure provides:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

And the Mississippi Supreme Court has held:

> It is unusual for [an appellate c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim . . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. [An appellate c]ourt will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (internal citations and quotations omitted).

¶9. The record does not affirmatively indicate that Hare received ineffective assistance of constitutional dimensions. Nor have the parties stipulated that the record is adequate to allow us to make findings without considering a trial judge's findings of fact. As a result, we decline to address this issue. Thus, we dismiss Hare's claims under this heading without

4

prejudice to his ability to raise them in postconviction proceedings, if he chooses to do so.

¶10.    Closely linked to the issue under this heading, the dissent would find that the circuit court should have instructed the jury on heat-of-passion manslaughter, and not culpable-negligence manslaughter.  And to this end, the dissent would reverse and remand for a new trial.  We respectfully disagree.

¶11.    First, we must note that the particular issue raised by the dissent was never raised by Hare.  Rather, Hare's argument was that his counsel was ineffective for not submitting a heat-of-passion-manslaughter instruction.  While here, the dissent argues that it was the circuit court which had the obligation—on its own—to instruct the jury on heat-of-passion manslaughter.  This is a wholly distinct and separate issue than Hare's claim of ineffective assistance of counsel.

¶12.    That said, even if the issue had been raised, we would find that the facts before us do not support a heat-of-passion-manslaughter instruction.  The dissent relies on caselaw that we agree stands for the proposition that trial judges have a duty to conform the jury instructions to the evidence.  *See Guster v. State*, 758 So. 2d 1086, 1089 (¶20) (Miss. Ct. App. 2000).  Here, however, we do not agree that such evidence would conform to a heat-of-passion-manslaughter instruction.  Based on Hare's testimony and his counsel's arguments, Hare's sole defense was that he was afraid of Clark and that he had acted in self-defense. What is more, the facts relied on by the dissent support that exact theory.  To be sure, Hare never testified that he was emotionally inflamed or impassioned.  Put another way, there is no evidence in the record that Hare was in "a state of violent and uncontrollable rage . . . ."

5

*See McCune v. State*, 989 So. 2d 310, 319 (¶15) (Miss. 2008) (outlining the elements of heat-of-passion manslaughter). And so, we find that the facts before us in the record do not support a heat-of-passion-manslaughter instruction, and the circuit court was under no obligation to give such an instruction on its own accord.

¶13. In conclusion, as to Hare's ineffective-assistance-of-counsel claim, we decline to address, and thus dismiss, this issue without prejudice to Hare's ability to raise it in postconviction proceedings, if he chooses to do so.

## II. Sufficiency of the Evidence

¶14. Next, Hare contends that there was insufficient evidence to find him guilty of depraved-heart murder because he was the victim of an unprovoked assault, and was thus acting in self-defense.

¶15. A motion for a JNOV is a challenge to the legal sufficiency of the evidence. *See Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). When assessing the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 61 So. 3d 887, 893 (¶24) (Miss. 2011) (quoting *Bush*, 895 So. 2d at 843 (¶16)). If the facts and inferences point in favor of the defendant with sufficient force that reasonable people could not have found the defendant guilty beyond a reasonable doubt, then the reviewing court must reverse and render. *Bush*, 895 So. 2d at 843 (¶16) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶16. Under Mississippi law, depraved-heart murder is defined as "[t]he killing of a human

6

being without the authority of law by any means or in any manner . . . [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual." Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2014). Depraved-heart murder is classified as second-degree murder. *Id.*

¶17. Considering the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to convict Hare of depraved-heart murder. Hare admitted to both the ownership of the knife and the stabbing of Clark. Also, the physical evidence showed that Hare stabbed Clark repeatedly while Clark was in a defensive posture. Specifically, there were defensive wounds to Clark's hands and arms. Hare stabbed Clark multiple times in the chest and abdomen, collapsing his lungs and damaging his liver and stomach—leaving his intestines and stomach protruding from his stab wounds.

¶18. Additionally, Hare's claim that he was merely acting in self-defense is not supported by the physical evidence. Hare had only one cut on his hand, and he did not complain of any scrapes or bruises. Also, while Hare testified that he and Clark were chest to chest during the fight, the evidence showed that there were multiple stab wounds to Clark's back. These stab wounds were front to back, and they angled downward. It was the jury's duty to weigh the evidence and to determine the credibility of the witnesses. Accordingly, we find that there was sufficient evidence for the jury to find beyond a reasonable doubt that Hare was guilty of depraved-heart murder. This issue is without merit.

### III. Weight of the Evidence

7

¶19.    Lastly, Hare contends that the jury's verdict—finding him guilty of depraved-heart murder—is contrary to the overwhelming weight of the evidence.  Specifically, Hare argues that the weight of the evidence supported the defense of self-defense and not a verdict of depraved-heart murder.  A reviewing court will only disturb a verdict based on the weight of the evidence "when [the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18).  In reviewing this issue, we weigh the evidence in the light most favorable to the verdict.  *Id*.

¶20.    For the reasons discussed in the previous issue, we do not find that allowing the verdict to stand would sanction an unconscionable injustice.  "Factual disputes are properly resolved by a jury and do not mandate a new trial." *Ealey v. State*, 158 So. 3d 283, 293 (¶31) (Miss. 2015).  This issue is without merit.

**CONCLUSION**

¶21.    Upon review of the record, we find no merit to any of the issues raised on appeal. Therefore, we affirm the findings of the circuit court.

¶22.    **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF DEPRAVED-HEART MURDER AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY-FIVE YEARS TO SERVE AND THE REMAINDER SUSPENDED, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.**

   **IRVING AND GRIFFIS, P.JJ., FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J.**

**CARLTON, J., DISSENTING:**

¶23.    I respectfully dissent from the majority's opinion because I would reverse and remand for a new trial.  The record reflects, and Hare asserts, that the jury was instructed on culpable-negligence manslaughter instead of heat-of-passion manslaughter, which was supported by the evidence.  Since precedent reflects that the trial judge has a duty to conform the instructions to the evidence, then I submit that this case should be reversed and remanded for a new trial.[1]

¶24.    A review of the record reflects evidentiary support for a heat-of-passion-manslaughter instruction.  The record shows that, after drinking, Clark, the deceased, went to the residence of his former girlfriend, Sims, where he belligerently trespassed on her property and ripped her screen door from its hinges.  Clark also yelled insults at Hare, who was inside the house with Sims, and he threatened to assault Hare.  Clark challenged Hare to come outside the residence, stating that he would "whip [Hare] up."  In addition, Clark threatened to come inside and get Hare and to smash Hare's vehicle.  Upon seeing Clark dig into his pocket, Sims called 911.  The record reflects that, when Clark went to Hare's car, Hare exited the residence, and Clark charged him.  A fight ensued, and the two men fell on and between the

---

[1] In *Guster v. State*, 758 So. 2d 1086, 1089-90 (¶21) (Miss. Ct. App. 2000), this Court held the trial court erred by failing to reform a self-defense instruction into a defense-of-others instruction.  This Court explained that the trial court possessed a duty to "conform the instruction to the evidence[,]" and we found "that the failure to reform th[e] instruction" resulted in prejudice, requiring reversal of the conviction and remand for a new trial.  In *Manuel v. State*, 667 So. 2d 590, 593 (Miss. 1995), the Mississippi Supreme Court held that, "[i]n homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuses that are supported by the evidence, no matter how meager or unlikely, and the trial court's failure to do so is error requiring reversal of a judgment of conviction."

9

cars parked at Sims's residence. Sims continued to call 911, and she told Clark that her home was not his home.

¶25. Hare testified at trial that he suffered from a leukemia-like illness and had taken steroids that resulted in weak bones. He testified that he had undergone two hip-replacement surgeries and one shoulder-replacement surgery and that he feared for his safety. Hare also stated that he thought Clark was "trying to beat [his] brains in." Hare testified that the altercation with Clark lasted about fifteen minutes and that he (Hare) was constantly telling Clark to let him go. As the record shows, the 911 tape revealed that Hare could indeed be heard screaming, "Let me go." Hare further testified that Clark was so strong that he flipped him onto his back. In addition, Hare stated that Clark choked him around the neck with his hands and got on top of him, straddling him, so that he could not move, get free, or leave. According to Hare, he only weighed between 165 and 170 pounds and, as previously stated, had experienced poor health conditions. At trial, Dr. LeVaughn, the chief medical examiner for the State, testified that he weighed Clark's body prior to performing the autopsy, and that Clark weighed 264 pounds.

¶26. During the struggle, Hare poked Clark with a box cutter, which resulted in Clark's multiple stab wounds. The record reflects that, when the struggle ended, Clark walked across the street and collapsed. However, the record also reflects that, when Hare exited Sims's residence, Clark tackled him, and then as the struggled continued, Clark again charged Hare. Evidence in the record supports Hare's claim that he stabbed Clark with the box cutter in self-defense and that Clark was the initial aggressor.

¶27. Based upon the foregoing, I respectfully submit that the face of the record shows error that substantially prejudiced the fundamental fairness of Hare's trial due to improper jury instructions. I would therefore reverse and remand for a new trial. Accordingly, I dissent from the majority's opinion.

**LEE, C.J., JOINS THIS OPINION.**